PEOPLE v BILLER

Docket No. 211933. Submitted December 15, 1999, at Grand Rapids. Decided February 4, 2000, at 9:05 A.M.

Ryan J. Biller was convicted following a bench trial in the Kent Circuit Court, Paul J. Sullivan, J., of carrying a concealed weapon in a vehicle without having a license to carry the weapon, a violation of MCL 750.227(2); MSA 28.424(2), a felony. The defendant appealed, alleging that because he was in the course of his employment as a private security guard for a company licensed under the Private Security Guard Act (PSGA), MCL 338.1051 *et seq.*; MSA 18.185(1) *et seq.*, at the time of the offense, he should have been charged under the PSGA, a violation of which constitutes a misdemeanor.

The Court of Appeals *held*:

The PSGA specifically provides that a private security guard is not authorized to carry a deadly weapon unless licensed to do so in accordance with the laws of this state. The act does not provide that private security guards are immune from state laws and it does not create a new or separate offense for carrying a concealed weapon in a vehicle without having a license to carry the weapon to be applied to persons subject to the PSGA. Therefore, the statute that the defendant was convicted of violating remains in effect with regard to private security guards.

Affirmed.

CRIMINAL LAW — CARRYING WEAPON IN VEHICLE WITHOUT LICENSE FOR WEAPON — PRIVATE SECURITY GUARDS.

The Private Security Guard Act does not provide that private security guards are immune from state laws; the act provides that a private security guard is not authorized to carry a deadly weapon unless licensed to do so in accordance with state law; a private security guard who is not licensed to carry a deadly weapon, but is found to be carrying a weapon in a vehicle without having a license to carry the weapon, may be convicted of the felony of carrying a weapon in a vehicle without having a license to carry the weapon (MCL 338.1051 *et seq.*, 750.227[2], [3]; MSA 18.185[1] *et seq.*, 28.424[2], [3]).

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*Rhoades, McKee, Boer, Goodrich & Titta* (by *David E. Bevins*), for the defendant.

Before: FITZGERALD, P.J., and HOEKSTRA and MARKEY, JJ.

HOEKSTRA, J. Defendant was charged with carrying a weapon in a vehicle without having a license to carry the weapon, MCL 750.227(2); MSA 28.424(2), which is a felony, MCL 750.227(3); MSA 28.424(3). Before trial, defendant moved to reduce the charge, arguing that because he was employed as a private security guard for Wolverine Dispatch, Inc., a company licensed under the Private Security Guard Act (PSGA), MCL 338.1051 *et seq.*; MSA 18.185(1) *et seq.,* he should have been charged under this act, a violation of which constitutes a misdemeanor. MCL 338.1082; MSA 18.185(32). According to defendant, the prosecutor was required to charge him under the PSGA because MCL 750.227; MSA 28.424 (the CCW statute) and subsection 19(3) of the PSGA, MCL 338.1069(3); MSA 18.185(19)(3), applied to the same conduct and subsection 19(3) was more specific and more recently enacted than the CCW statute. For different reasons, both the district court and the circuit court found defendant's argument without merit and declined to reduce the charge. Following a bench trial, defendant was convicted as charged. The circuit court sentenced him to pay fines and costs totaling $610. Defendant appeals as of right from the circuit court's

order denying defendant's motion to reduce the charge. We affirm.

The pertinent facts are undisputed. The police stopped defendant, while in the course of his employment as a security guard with Wolverine Dispatch, for a traffic violation. At that time, the police discovered a loaded handgun under the passenger seat of defendant's vehicle. Defendant was not licensed to carry the handgun in the vehicle. He was charged and convicted under MCL 750.227(2); MSA 28.424(2), which prohibits an unlicensed person from carrying a pistol, "whether concealed or otherwise, in a vehicle operated or occupied by the person . . . ."

Defendant's sole argument on appeal is that the trial court erred in denying his motion to reduce the charge. He claims that rather than charging him under the CCW statute, the prosecutor was required to charge him for violating subsection 19(3) of the PSGA, which provides:[1]

---

[1] Section 19 of the PSGA provides in full:

(1) The particular type of uniform and insignia worn by a licensee or his employees, must be approved by the department and shall not deceive or confuse the public or be identical with that of a law enforcement officer of the federal government, state, or a political subdivision thereof in the community of the license holder. Shoulder identification patches shall be worn on all uniform jackets, coats, and shirts and shall include the name of the licensee or agency. Shoulder identification patches or emblems shall not be less than 2 inches by 3 inches in size.

(2) A badge or shield shall not be worn or carried by an alarm system agent, private policeman, special policeman, watchman, or employee, or licensee of an alarm system contractor, patrol service agency, or private security guard agency, unless approved by the director of the department of state police.

*(3) A person licensed as an alarm system contractor, alarm system agent, or a private security guard or agency is not authorized to carry a deadly weapon unless he is licensed to do so in accordance with the laws of this state.*

> A person licensed as an alarm system contractor, alarm system agent, or a private security guard or agency is not authorized to carry a deadly weapon unless he is licensed to do so in accordance with the laws of this state. [MCL 338.1069(3); MSA 18.185(19)(3).]

Violation of the PSGA is a misdemeanor, MCL 338.1082; MSA 18.185(32). Relying on *People v LaRose*, 87 Mich App 298; 274 NW2d 45 (1978), defendant argues that the two statutes prohibit the same conduct and, because the CCW statute is a general statute, whereas subsection 19(3) of the PSGA is a specific statute that was enacted more recently, he should have been charged under the PSGA. We disagree with defendant's analysis.

In deciding this issue, we must interpret the PSGA. "An issue of statutory interpretation is a question of law subject to de novo review." *People v Law*, 459 Mich 419, 423; 591 NW2d 20 (1999). When interpreting a statute, the judiciary's primary goal is to ascertain and give effect to the intent of the Legislature. *People v Joseph*, 237 Mich App 18, 20; 601 NW2d 882 (1999). "If reasonable minds can differ regarding the meaning of statutory language, this Court will seek to interpret that language, bearing in mind that the Legislature is presumed to have intended the meaning it has plainly expressed." *Id.* at 21.

The preamble to 1968 PA 330, which established the PSGA, provides, in relevant part, that the purposes of the act include "to license and regulate private security guards . . . [and] to protect the general public

---

(4) Nothing in this act will prevent a licensee from authorizing his employee to carry a night stick constructed solely of wood. [MCL 338.1069; MSA 18.185(19) (emphasis supplied).]

against unauthorized, unlicensed and unethical operations by individuals engaged in private security activity . . . ."[2] With these purposes in mind, we note that the statute imposes licensing requirements on private security guards and related occupations and safeguards the public from improper conduct by these persons; nowhere in the statute does the Legislature provide that a private security guard is immune from Michigan laws. To the contrary, the PSGA specifically provides that a private security guard "is not authorized to carry a deadly weapon unless he is licensed to do so *in accordance with the laws of this state.*" MCL 338.1069(3); MSA 18.185(19)(3) (emphasis supplied).

The CCW statute prohibits individuals from carrying a pistol, "whether concealed or otherwise, in a vehicle operated or occupied by the person . . . ." MCL 750.227(2); MSA 28.424(2). We recognize that some laws provide exceptions to this rule[3] ; however, the PSGA does not confer on private security guards immunity from other laws of this state. From its reference to the laws of Michigan, it is apparent that the Legislature, when enacting subsection 19(3), was aware of the CCW statute and did not intend to change its penalties merely because an individual charged might also be a licensed private security guard. Instead of carving out an exception to the CCW statute, the PSGA makes clear the Legislature's intent to include private security guards as persons governed by the applicable Michigan laws, and thus the CCW statute remains in

---

[2] A preamble is not to be considered authority for construing an act, but is useful for interpreting the purpose and scope of the act. *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991).

[3] See, e.g., MCL 750.231; MSA 28.428 (for example, peace officers exempted).

effect with regard to private security guards. We conclude that the Legislature did not intend the language in MCL 338.1069(3); MSA 18.185(19)(3) to create a new or separate offense, but merely to clarify that other laws in Michigan, including the CCW statute, remained in effect with regard to private security guards.

We hold that the trial court did not err in refusing to reduce defendant's felony charge to a misdemeanor under the PSGA because the Legislature intended private security guards to remain governed by the laws of Michigan, and the PSGA does not create a new or separate offense for carrying a concealed weapon to be applied to persons subject to the act.[4]

Affirmed.

---

[4] Having determined that the Legislature did not intend to provide lesser penalties for private security guards than other persons who are charged with violating Michigan law, we need not address the circuit court's analysis that determined that it is within the prosecutor's discretion to choose under which statute to proceed, the CCW statute or the PSGA, because the statutes prohibit different conduct and the offenses require different elements. However, we note that this is also a solid basis for denying defendant's request to reduce the charge against him. Although the circuit court relied on a different line of reasoning, we will not reverse where the trial court reached the right result for a wrong reason. *People v Ramsdell*, 230 Mich App 386, 406; 585 NW2d 1 (1998).