# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

GREGORY TERRANCE LEE,

　　　　　Defendant-Appellant.

UNPUBLISHED
April 14, 2016

No.  325039
Wayne Circuit Court
LC No.  14-002138-FC

---

Before:  GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  Defendant was sentenced to 50 to 75 years' imprisonment for each second-degree murder conviction, and two years' imprisonment for the felony-firearm conviction.  We affirm.

This case arises from defendant's murder of cousins Lorne Jones and Eric Jones. Defendant met with the two in order to purchase marijuana.  However, a verbal altercation ensued after words were exchanged regarding the murder of "Brad"—a close friend of defendant, whom defendant believed was murdered by Lorne and Eric.  Defendant shot both men approximately 22 times, killing them.  After defendant was arrested, he told police officers that he killed the two for "[w]hat they did to Brad."  At trial, defendant testified that he saw Lorne reaching for his waistband and that he saw a gun.  Defendant immediately pulled out his gun and started shooting.  After trial, defendant was convicted, and now appeals.

Defendant first argues that the trial court violated his constitutional rights to a fair trial and a properly instructed jury, in addition to the right to present a defense, by failing to give a requested voluntary manslaughter instruction to the jury.  We disagree.

Generally, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."  *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).  In the trial court, defendant requested a voluntary manslaughter

instruction not once, but twice. Thus, this issue was preserved.[1] However, defendant did not object on the basis of the purported constitutional violations, leaving that issue unpreserved.

A claim of instructional error involving a question of law is reviewed de novo, but the trial court's conclusion that an instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). Appellate review of unpreserved errors is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999)

"When a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is supported by a rational view of the evidence." *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013) (citation and quotation marks omitted). "To prove that a defendant committed voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id.* (citation and quotation marks omitted). "[F]or the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Id.* at 287 (citation and quotation marks omitted). Generally, sufficient evidence to support a voluntary manslaughter instruction exists when there is evidence that the defendant was spurred by at least some physical provocation. See, e.g., *id.* at 287-288 (holding that the defendant was adequately provoked, and a voluntary manslaughter instruction warranted, when the "victim started using profanity and then swung a baseball bat and struck defendant."). However, mere words and insults will generally not be considered insufficient provocation. See, e.g., *People v Pouncey*, 437 Mich 382, 391-392; 471 NW2d 346 (1991) (holding that insulting words are generally not adequate provocation, and that a mere "verbal fracas" between the victim and the defendant was not adequate provocation).

Initially, we note that the trial court incorrectly concluded that manslaughter was not a lesser included offense of first-degree murder. The law clearly holds that voluntary manslaughter is a lesser included offense of first-degree murder. *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003) ("[B]oth forms of manslaughter are necessarily included lesser offenses of murder."). However, despite this error, the trial court reached the right outcome in denying the instruction.[2] A rational view of the evidence presented at trial does not support a voluntary manslaughter instruction on the basis of provocation. The evidence showed that Lorne and Eric had at least taunted defendant and insulted him. Additionally, defendant testified at trial

---

[1] The prosecution argues on appeal that defendant failed to preserve this issue because his counsel did not request the voluntary manslaughter instruction based on provocation grounds. Instead, defense counsel asked for the instructions on a self-defense theory. We disagree. Because defendant requested a jury instruction on manslaughter, defendant's claim of instructional error was preserved.

[2] This Court will ordinarily not reverse a lower court if it reaches the right result for the wrong reason. *People v Goold*, 241 Mich App 333, 342 n 3; 615 NW2d 794 (2000).

that Lorne told Eric to get out and beat defendant. Defendant also stated that he saw Lorne reaching for his waistband and that he saw a gun. However, these facts do not support the conclusion that defendant was provoked to the extent that a reasonable person would lose control and act in the heat of passion. See *Mitchell*, 301 Mich App at 286. Defendant was, at best, goaded by words, and faced an ephemeral possibility of some potential physical contact. However, there was no actual physical altercation between the three men. Moreover, while defendant testified that he saw Lorne with a gun, the jury was instructed on self-defense, and rejected that theory. Accordingly, the voluntary manslaughter instruction was properly denied, and there was no plain error affecting defendant's substantial rights.

Defendant next argues that the trial court violated his constitutional and statutory right to be present during a critical proceeding by reading a corrected jury instruction in his absence. We disagree. "This Court reviews constitutional questions de novo." *People v Powell*, 303 Mich App 271, 274; 842 NW2d 538 (2013). Questions of statutory interpretation are also reviewed de novo. *People v Krueger*, 466 Mich 50, 53; 643 NW2d 223 (2002).

A criminal defendant has both a constitutional and statutory right to be present during his or her trial. *People v Kammeraad*, 307 Mich App 98, 116-117; 858 NW2d 490 (2014). Namely, the confrontation clauses and the due process clauses of both the federal and Michigan constitutions impliedly guarantee this right. US Const, Am VI; Const 1963, art 1, § 20; US Const, Am XIV; Const 1963, art 1, § 17; *Kammeraad*, 307 Mich App at 116-117. Furthermore, MCL 768.3 provides, "No person indicted for a felony shall be tried unless personally present during the trial . . . ." Although "trial" encapsulates a broad spectrum of processes and procedures, the constitutional and statutory right to be present applies to the jury instruction phase as well. *Powell*, 303 Mich App at 275. The test to determine whether "defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence." *Buie*, 298 Mich App at 59 (citation and quotation marks omitted).

After reading the jury instructions, the trial court realized it had made an error. The trial court proceeded to correct the error, but defendant was absent from the courtroom at the time. In defendant's absence, the trial court stated the following to the jury:

> Okay. Here's the final instructions. And when I gave you that final instruction I said running away from the police. I should have said running away from the scene. Thank you? Okay.

> Alright, you can start with your deliberations. Only knock on the door with a note, if you need anything.

From the record, it was clear that the trial court was correcting a trivial error—replacing one word for another. Moreover, even defendant concedes that he does not know whether the jurors, who were in the jury room at the time the judge gave the corrected instruction, could see that defendant was absent from the courtroom. Thus, we do not agree that there was a reasonable probability that defendant was prejudiced by his absence. *Id*.

In his Standard 4 brief, defendant argues that the prosecution committed misconduct by failing to divulge crucial witness contact information and by making inflammatory statements

during cross-examination. We disagree. Because defendant did not object to the prosecutor's conduct at trial, this issue is unpreserved and review is limited to plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014). Error requiring reversal will not be found when a curative instruction could have displaced any prejudicial effect of the prosecutor's misconduct. *People v Johnigan*, 265 Mich App 463, 467; 696 NW2d 724 (2005).

We first address defendant's assertion that the trial court committed misconduct in its failure to provide discovery. Discovery in criminal cases is fairly limited, and is defined and governed solely by MCR 6.201. *People v Greenfield*, 271 Mich App 442, 447-448; 722 NW2d 254 (2006). MCR 6.201(A)(1) provides, in relevant part:

> [A] party upon request must provide all other parties:
>
> (1) the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview; the witness list may be amended without leave of the court no later than 28 days before trial . . . .

Additionally, MCR 6.201(F) provides: "Unless otherwise ordered by the court, the prosecuting attorney must comply with the requirements of this rule within 21 days of a request under this rule and a defendant must comply with the requirements of this rule within 21 days of a request under this rule."

> On November 6, 2014, defense counsel told the trial court the following:
>
> I checked my emails and all my mail. The prosecutor never did send me a witness list. I found out that one of the witnesses that can testify to exculpatory evidence on behalf of my client is not – although mentioned on the witness list not checked off as a witness they were going to call. I prepared a subpoena for that witness and I was given the address of that witness today because they block out or black out all the – . . . .
>
> So I'm going to ask the Court's assistance in having the officer-in-charge, the Detroit Police, serve that witness who is on their witness list. His name is Nader Mohammed Sherrie, that's N-a-d-e-r Mohammed – . . . .

Moreover, on November 10, 2014, defense counsel again mentioned on the record that he was missing contact information from the prosecution regarding Nader Mohammed Sherrie, Terrance Anthony Collins, Sharde Thomas, and Latasha Henderson. Again, defense counsel mentioned that the Detroit Police Department reports contained the names of these individuals and contact information, but that the contact information had been redacted. Defense counsel stated, "I emailed Counsel for the Prosecution to give me their specific addresses. And I was never given their specific addresses; they were blacked out, on the discovery." Assuming defense counsel

-4-

spoke truthfully, it appears that the prosecution inappropriately failed to send defendant contact information in accordance with MCR 6.201(A), thus violating the court rule.[3]

However, the violation does not affect defendant's substantial rights. Defendant does not show how the presence of the witnesses would have affected the outcome of the trial. See *Carines*, 460 Mich at 763. The record is sparse as to what the witnesses would have precisely testified. However, defense counsel's general contention was that these witnesses would have stated that Lorne and Eric admitted to being involved in Brad's murder, and that Lorne and Eric picked on defendant previously. However, defendant himself testified that he was afraid of Lorne and that he was acting in self-defense. The jury also heard that defendant told police that Lorne and Eric were involved in Brad's murder. Thus, we are not convinced that these witnesses would have changed the outcome of the trial, especially considering the substantial evidence admitted against defendant at trial, including defendant's prior inconsistent statement to police, where he stated that he shot and killed Lorne and Eric. In addition, there was an eye witness who saw defendant leaving the scene, and the evidence showed that the victims were shot 22 times. Accordingly, defendant's substantial rights were not affected by the violation.

Defendant also claims the prosecutor's comments during cross-examination constituted misconduct. "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Questions of prosecutorial misconduct are decided on a case-by-case basis, and a prosecutor's remarks must be evaluated in context, including the defense arguments and the relationship to the evidence admitted at trial. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014); *Dobek*, 274 Mich App at 64.

The prosecutor, during cross-examination, asked defendant the following: "You used that weapon a few weeks prior, at the gas station on State Fair; didn't you, sir?" The prosecutor

---

[3] We hold that the prosecution's failure to send witness contact information in this case was not a violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, defendant must show: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 150 (citation and quotation marks omitted). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 157 (citation and quotation marks omitted). Even assuming the prosecution suppressed the contact information, and that the information was somehow favorable and exculpatory for defendant, the information was not material, as defendant himself admitted to the murders and admitted to having killed the individuals partly because of their alleged involvement in Brad's earlier death, in addition to the fact that the jury rejected defendant's self-defense argument.

followed up with: "You've fired firearms at people before; correct?" The prosecutor finally asked, "You fired a firearm at someone at that gas station a couple of weeks prior; didn't you, sir?" Defendant denied all of questions posed by the prosecutor. Defendant claims on appeal that these questions were implicit allegations of defendant's prior bad acts contrary to MRE 404.[4] However, defendant denied all the questions, so there was no evidence in the record that defendant committed these acts. Further, the trial judge properly instructed the jury that the prosecutor's statements were not evidence. Thus, although defendant claims that the prosecutor's statements were allegations against his character, there was no circumstantial or direct record evidence that defendant committed these acts. Furthermore, even assuming the prosecutor's questions constituted misconduct, there was substantial evidence against defendant presented at trial, including his prior inconsistent statement to police where he admitted to killing Lorne and Eric. Given the brief nature of the prosecutor's questions in light of the significant evidence against defendant, defendant cannot show prejudice.

Finally, defendant argues in his Standard 4 brief that his trial counsel was ineffective for failing to investigate and produce witnesses at trial.[5] We disagree. "[A] defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). Defendant did not move for a new trial or evidentiary hearing here. Accordingly, the issue is unpreserved for appellate review. "When the trial court has not conducted a hearing to determine whether a defendant's counsel was ineffective, our review is limited to mistakes apparent from the record." *Id.* at 68.

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

Defense counsel's efforts in ascertaining the missing witnesses did not fall below an objective standard of reasonableness. Indeed, the record reflects that defense counsel was trying

---

[4] MRE 404(b)(1) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ."

[5] Defendant also argues that defense counsel was ineffective because he "failed to press for a firm ruling on the admissibility of information throughout the entire court proceedings . . . ." Defendant does not elaborate. Accordingly, this argument is abandoned. See *People v Portellos*, 298 Mich App 431, 445; 827 NW2d 725 (2012) ("Parties may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims, and we may consider unsupported issues abandoned.").

to find the witnesses but did not have their addresses. However, even assuming defense counsel's performance was deficient, defendant's ineffective assistance claim still fails because he was not prejudiced by his counsel's failure. As discussed above, there was no probability that the outcome of the proceedings would not have been different, as the presence of the witnesses would likely not have altered the jury's verdict.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood